IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 13-13822
United States District Court, Southern District of Florida
Case No.:  13-cv-60066-Cohn/Seltzer

ABRAHAM INETIANBOR,

Plaintiff/Appellee,

v.

CASHCALL, INC.,

Defendant/Appellant.

## APPELLANT CASHCALL, INC.'S
## MOTION TO STAY MANDATE PENDING THE FILING OF A PETITION
## FOR WRIT OF CERTIORARI

KATHERINE E. GIDDINGS, B.C.S. (949396)
**AKERMAN LLP**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:   (850) 222-0103
katherine.giddings@akerman.com

CHRISTOPHER S. CARVER (993580)
**AKERMAN LLP**
One Southeast Third Ave., 25th Fl.
Miami, Florida 3313132301
Telephone:  (305) 374-5600
Facsimile:   (305) 374-5095
christopher.carver@akerman.com

KATYA JESTIN
NEIL M. BAROFSKY
BRIAN J. FISCHER
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022-3908
Telephone:  (212) 891-1600

BARRY LEVENSTAM
DANIEL T. FENSKE
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
blevenstam@jenner.com

**ATTORNEYS FOR APPELLANT**

USCA Case No. 13-13822


United States District Court, Southern District of Florida
Case No.:  13-60066-CIV-Cohn/Seltzer


Inetianbor v. CashCall, Inc.

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE PURSUANT TO F.R.A.P. 26.1 AND 11TH CIR. R. 26.1-1

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, Appellant, CASHCALL, INC., by and through its undersigned counsel, hereby discloses the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock:

1.   Akerman LLP f/k/a Akerman Senterfitt (Trial and Appellate Counsel for Defendant/Appellant)

2.   Barofsky, Neil  M. (Appellate Counsel for Defendant/Appellant)

3.   Carver, Christopher S. (Trial and Appellate Counsel for Defendant/Appellant)

4.   CashCall, Inc. (Defendant/Appellant)

5.   Cheyenne River Sioux Tribe (Designated Venue for Arbitration)

6.   Cohn, James I. (District Court Judge)

C-1

USCA Case No. 13-13822

Inetianbor v. CashCall, Inc.

7.    Fenske, Daniel T. (Appellate Counsel for Defendant/Appellant)

8.    Fischer, Brian J. (Appellate Counsel for Defendant/Appellant)

9.    Giddings, Katherine E. (Appellate Counsel for Defendant/Appellant)

10.    Goss, Aaron (Trial and Appellate Counsel for Plaintiff/Appellee)

11.    Hughes, John S. (Trial  and Appellate Counsel for Plaintiff/Appellee)

12.    Inetianbor, Abraham (Plaintiff/Appellee)

13.    Jenner & Block LLP (Appellate Counsel for Defendant/Appellant)

14.    Jestin, Katya (Appellate Counsel for Defendant/Appellant)

15.    Levenstam, Barry (Appellate Counsel for Defendant/Appellant)

16.    Reddam, J. Paul (Related to Defendant/Appellant)

17.    Rodriguez, Stacy J. (Trial and Appellate Counsel for Defendant/Appellant)

18.    Seltzer, Barry S. (District Court Chief Magistrate Judge)

19.    Shapiro, Andrew M. (Trial Counsel for Defendant/Appellant)

20.    Varnell & Warwick, P.A. (Trial and Appellate Counsel for Plaintiff/Appellee)

21.    Varnell, Janet R. (Appellate Counsel for Plaintiff/Appellee)

C-2

USCA Case No. 13-13822

Inetianbor v. CashCall, Inc.

22.    Wallace & Graham, P.A. (Trial and Appellate Counsel for Plaintiff/Appellee)

23.    Wallace, Mona Lisa (Trial and Appellate Counsel for Plaintiff/Appellee)

24.    Warwick, Brian William (Trial and Appellate Counsel for Plaintiff/Appellee)

25.    Western Sky Financial, LLC (Lender for the Underlying Loan)

26.    Williams, Cathy Anne (Trial and Appellate Counsel for Plaintiff/Appellee)

Appellant CashCall, Inc. ("CashCall"), by its undersigned counsel, pursuant to Fed. R. App. P. 41(d)(2), respectfully submits this Motion to Stay the Mandate Pending the Filing of a Petition for Writ of Certiorari.

## I.    INTRODUCTION

On December 1, 2014, this Court denied CashCall's petition for rehearing of its October 2, 2014 Opinion (the "Opinion") affirming the district court's refusal to compel arbitration, reported as *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014).  The mandate may issue as soon as December 8, 2014.  *See* Fed. R. App. P. 41(b).  CashCall moves for a stay of the mandate pending the filing of (and ruling upon) a petition for writ of certiorari, currently due on March 2, 2015.[1]

## II.    ARGUMENT

This Court will stay its mandate pending the filing of a petition for writ of certiorari if the movant "show[s] that the certiorari petition would present a substantial question and that there is good cause for a stay."  Fed. R. App. P. 41(d)(2)(A).  "[T]he circuit court's inquiry centers on whether the applicant will suffer irreparable injury, and whether the applicant has a reasonable probability of success on the merits."  20A *Moore's Federal Practice* 3d, § 341.14[2], at p. 341.9

---

[1]    CashCall notes that in a very similar situation—in which an order denying arbitration was affirmed and the appellant sought a stay pending filing a petition for certiorari—Judge Wilson of this Court granted the motion. *See* Order, *Dasher v. RBC Bank (USA)*, No. 13-10257 (11th Cir. Apr. 8, 2014), copy attached as Appendix A.

(2013). "To demonstrate a reasonable probability of succeeding on the merits, the applicant must show a reasonable probability that four justices will vote to grant certiorari and a reasonable possibility or 'fair prospect' that five justices will vote to reverse the circuit court's judgment." *Id.* (citations omitted).

### A.    CashCall's Petition Will Present Substantial Questions Of Federal Arbitration Law.

CashCall's petition for certiorari will present serious and substantial questions of federal arbitration law, including:

1. Whether there is a non-textual "integrality exception" to the Federal Arbitration Act's ("FAA") mandatory requirement that a substitute arbitrator "shall" be appointed by the court whenever the arbitrator listed in the parties' contract is unavailable for "any ... reason." 9 U.S.C. § 5.

2. Whether a court may refuse to compel arbitration by disregarding a severance provision that the parties have included in the arbitration clause, where enforcing the severance provision would render the arbitration clause enforceable.

The Supreme Court has displayed a sustained interest in arbitration issues, as reflected in more than 35 significant opinions, 13 of which were issued in just the past 5 years.[2] The Supreme Court, moreover, has not yet addressed the issues to be

---

[2]  *See, e.g.*, *BG Grp. PLC v. Republic of Arg.*, 134 S. Ct. 1198 (2014); *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013); *Am. Express Co. v. Italian*

presented in CashCall's petition for certiorari.   Finally, as this Court itself recognized, the Opinion deepened a split among the federal courts of appeals with respect to the existence of any "integrality exception" to the FAA, as set forth in Question 1.   *See Inetianbor*, 768 F.3d at 1350 ("This rule is not without controversy.  *See Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 790-92 (7th

---

*Colors Rest.*, 133 S. Ct. 2304 (2013); *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500 (2012); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012); *KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010); *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009); *Vaden v. Discover Bank*, 556 U.S. 49 (2009); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *Preston v. Ferrer*, 552 U.S. 346 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003); *PacifiCare Health Sys. v. Book*, 538 U.S. 401 (2003); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002); *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002); *Circuit City Stores v. Adams*, 532 U.S. 105 (2001); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000); *Doctor's Assocs. v. Casarotto*, 517 U.S. 681 (1996); *First Options v. Kaplan*, 514 U.S. 938 (1995); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52 (1995); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190 (1991); *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468 (1989); *Perry v. Thomas*, 482 U.S. 483 (1987); *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983); *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243 (1977); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957).

3

Cir. 2013) (criticizing and rejecting the integral provision rule).").  It is thus reasonably probable that four Justices will vote to review one or both of these questions and, if review is granted, there is at least a fair prospect that five Justices will vote to reverse the Opinion.

### 1.    The Opinion Acknowledged That It Was Deepening A Split In The Circuits With Respect To The Existence Of A Non-Textual "Integrality Exception" To The FAA.

One of the foremost considerations governing the grant of a petition for certiorari is whether "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter."  Sup. Ct. Rule 10(a).  By holding that there exists a non-textual "integrality exception" to the FAA's mandatory requirement that a substitute arbitrator "shall" be appointed by the court whenever the arbitrator listed in the parties' contract is unavailable for "any ... reason,"  9 U.S.C. § 5, the Opinion deepened just such a conflict.

In *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787 (7th Cir. 2013), the Seventh Circuit thoroughly analyzed this very question and concluded there is no such "integrality" exception to FAA § 5.  *Id.* at 789-93.  *Green* acknowledged that other courts had assumed that § 5 contains an "integral part" exception, but *Green* observed that these cases all rested on *dicta* from a single unpersuasive district court case from within the Seventh Circuit: *Zechman v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359 (N.D. Ill. 1990). *Green* concluded that *Zechman* was incorrect and overruled it. *See* 724 F.3d at 792.

This Court's Opinion in *Inetianbor* is the first court of appeals decision to address this issue since *Green* was released in July 2013. The Opinion explicitly recognized that it was splitting from *Green*. *See Inetianbor*, 768 F.3d at 1350. Accordingly, there can be no dispute that this Court "has entered a decision in conflict with the decision of another United States court of appeals on the same important matter." Sup. Ct. Rule 10(a).

> **2.    There Is A Fair Prospect That Five Justices Will Vote To Reverse This Court's Judgment On The Issue Of Integrality.**

Respectfully, there is at least a fair prospect that the Supreme Court will vote to reverse this Court on the question of whether the FAA contains an exception to its mandate that a substitute arbitrator must be appointed whenever the parties' chosen arbitrator is unavailable. The Supreme Court would likely adopt *Green*'s holding that the text of the FAA contains no such integrality exception and that imposing the exception would undercut the FAA's national policy favoring arbitration.

As *Green* noted, "no court has ever explained what part of the text or background of the [FAA] requires, or even authorizes, such an" integrality exception. 724 F.3d at 792. The language of the FAA is plain and clear: a

substitute "shall" be appointed whenever the arbitral forum is unavailable for "any ... reason." 9 U.S.C. § 5. The FAA lists no exceptions, and the Supreme Court is likely to conclude that none exist.

The Opinion primarily justified the integrality exception on the grounds that arbitration "is a matter of contract" and that courts should enforce arbitration clauses "in accordance with the[ir] terms." 768 F.3d at 1349 (quotations and emphasis omitted).

The Supreme Court rejected this same argument in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396 (2008), where one party advanced this justification for why parties should be allowed to expand by contract the grounds for judicial review of arbitration awards beyond those provided by the FAA: "arbitration is a creature of contract, and the FAA is motivated, first and foremost, by a congressional desire to enforce agreements into which parties have entered." *Id.* at 585, 128 S. Ct. at 1404 (quotations omitted).

The Supreme Court acknowledged that "the FAA lets parties tailor some, even many, features of arbitration by contract," but the Court held that "the FAA has textual features at odds with enforcing a contract [that] expand[s] judicial review following the arbitration." *Id.* at 586, 128 S. Ct. at 1404 (citation omitted). In particular, FAA § 9 states that courts "must grant" confirmation of any arbitral award unless it is "vacated, modified, or corrected as prescribed in sections 10 and

11," which "unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions" in § 10 or § 11 applies. *Id.* at 587, 128 S. Ct. at 1405.

Section 5 contains similar mandatory language: the court "*shall* designate and appoint an arbitrator" if "for *any* … reason there shall be a lapse in the naming of an arbitrator." 9 U.S.C. § 5 (emphases added). Just as there is no exception to § 9's requirement that a court "must" confirm an award unless a specified ground in § 10 or § 11 is met, the Supreme Court would likely hold that there is no exception to § 5's requirement that a court "shall" appoint a substitute arbitrator whenever there is a "lapse in the naming of an arbitrator," such as because the designated arbitrator is unavailable.

Even if the parties here had tried to contract around § 5, they could not have done so any more than the parties in *Hall Street* could contract around § 9. In other words, the Opinion not only disregarded the mandatory language in FAA § 5, but it also relied upon the very same argument that the Supreme Court rejected in *Hall Street*: that the parties' contractual agreement could somehow be interpreted to trump the requirements of the FAA. *See Hall Street*, 552 U.S. at 585-86, 128 S. Ct. at 1404. The Supreme Court would likely apply its rationale from *Hall Street* and conclude that the text of the FAA does not support—and indeed precludes—the integrality exception to FAA § 5.

7

Further, the Supreme Court would likely conclude that an integrality exception would undercut the primary purpose of the FAA by forcing parties to litigate whether a particular arbitral detail is "integral" whenever a term of an arbitration provision arguably fails or is missing.  As *Green* noted, "[h]ow could a district judge tell what is 'integral' without a trial at which parties testify about what was important to them and lawyers present data about questions such as whether consumers or businesses shifted from arbitration to litigation when the Forum stopped accepting new consumer disputes for resolution? The process would be lengthy, expensive, and inconclusive to boot."  724 F.3d at 792.

In an opinion issued just last year, the Supreme Court rejected such a requirement to conduct case-by-case determinations: "It would be unwieldy and unsupported by the terms or policy of the [FAA] to require courts to proceed case by case to tally the costs and burdens to particular plaintiffs."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013) (alterations omitted).  Thus, the Supreme Court would likely reject the integrality exception on the additional ground that it undermines "the informality of arbitral proceedings [which] is itself desirable, reducing the cost and increasing the speed of dispute resolution."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011).

Given the lack of textual support in the FAA for an integrality exception, as well as the fact that such an exception undercuts the central purpose of the FAA,

8

there is a fair prospect that five Justices will vote to reverse this Court's Opinion and hold that FAA § 5 contains no integrality exception.

> **3.    The Opinion Creates A Second Circuit Split On Whether A Court Can Refuse To Enforce A Severance Provision Within An Arbitration Clause, Where Doing So Renders The Entire Arbitration Clause Unenforceable.**

The Supreme Court is also likely to grant CashCall's petition seeking review of the portion of this Court's Opinion refusing to enforce the Severance Provision contained within the parties' Arbitration Clause. The Opinion conflicts with the rulings of numerous other circuits, all of which have held that a severance provision requires courts to enforce the balance of an arbitration provision where a particular term is unenforceable.

The Arbitration Clause's Severance Provision directs that "[i]f any of this Arbitration [Clause] is held invalid, *the remainder shall remain in effect*." (Doc. 53-2 at 7 (emphasis added)). The Opinion refused to enforce this Severance Provision. Specifically, the Opinion deemed the tribal arbitration details an "essential part" of the Arbitration Clause and thus held that they were not subject to the Severance Provision. 768 F.3d at 1352-53. Nothing in the Loan Agreement said this expressly, though, and the Severance Provision made no exception from its directive that "the remainder [of the Arbitration Clause] *shall* remain in effect." (Doc. 53-2 at 7 (emphasis added)). The Court's refusal to apply the Severance Provision led the Court to strike the entire Arbitration Clause (and thus to force the

9

parties to litigate in court), despite the fact that the parties had explicitly agreed that the remainder of the Arbitration Clause would remain in effect even if part of that Clause were invalid.

This ruling is in stark contrast to rulings from other circuits that have addressed the issue. As then-Judge Roberts wrote for the court in *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77 (D.C. Cir. 2005): "Compelling [the plaintiff] to arbitrate with the [offending clause] severed is entirely consistent with the intent to arbitrate he manifested in signing the employment agreement in the first place." *Id.* at 83-84. The Eighth Circuit held likewise in *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682-83 (8th Cir. 2001), and the Fifth Circuit severed an invalid portion of an arbitration clause to preserve the remainder of that clause even when the parties' contract apparently did not contain a severance provision, *see Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003).

The Fifth, Eighth, and District of Columbia Circuits would have enforced the parties' Severance Provision and preserved the Arbitration Clause. By refusing to enforce the Severance Provision, the Opinion created a split with those circuits on this important issue of arbitration and contract law, and accordingly there is at least a reasonable probability that the Supreme Court will grant review. *See* Sup. Ct. Rule 10(a).

**4.    There Is A Fair Probability That The Supreme Court Will Reverse This Court's Decision On The Effect Of The Severance Provision.**

Respectfully, there is a fair possibility that the Supreme Court would reverse the Opinion holding that the Severance Provision could not be enforced. The Supreme Court has made clear that courts should employ a pro-arbitration canon of construction requiring that arbitration be compelled unless the arbitration clause cannot be interpreted to cover the dispute. By disregarding the Severance Provision, the Opinion effectively employed an anti-arbitration canon of construction and thus would likely be reversed on appeal.

The FAA directs that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1353 (1960). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including when "constru[ing] ... the contract language itself." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983). In other words, under the Supreme Court's pro-arbitration canon of construction, if an arbitration provision can be read in two ways, one that requires arbitration and one that does not, courts must "resolve th[e]

11

ambiguity *in favor* of arbitration." *Khan v. Dell Inc.*, 669 F.3d 350, 356 (3d Cir. 2012) (court's emphasis).

The Opinion did the opposite: it refused to enforce a standard severance provision even though doing so thwarted the parties' express agreement to arbitrate. *See* 768 F.3d at 1352-53. The Severance Provision states that "[i]f *any* of this Arbitration [Clause] is held invalid, the remainder shall remain in effect." (Doc. 53-2 at 7 (emphasis added).) Rather than apply this language, the Opinion instead concluded that a severance provision cannot be enforced if the offending term was an "essential part" of the parties' bargain. 768 F.3d at 1352.

By construing the Severance Provision in a way that *prevents* arbitration, the Opinion runs directly counter to the Supreme Court's holdings in *Warrior & Gulf*, 363 U.S. at 582-83, 80 S. Ct. at 1353, and *Moses H. Cone*, 460 U.S. at 24-25, 103 S. Ct. at 941. If the Opinion had applied the Severance Provision pursuant to its terms, it would have struck the tribal arbitration details and appointed a substitute pursuant to FAA § 5.

There is at least a fair probability that the Supreme Court would apply the rationale of *Warrior & Gulf* and *Moses H. Cone* and reverse this Court on the grounds that the Severance Provision rendered the Arbitration Clause susceptible of an interpretation that would cover this dispute.

**B.    CashCall Will Be Irreparably Harmed Absent A Stay Of The Mandate.**

Assuming that CashCall is correct that its arbitration provision is enforceable, it faces a likelihood of irreparable injury absent a stay. *See Barnes v. E-Systems, Inc.,* 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers) (noting that the likelihood of irreparable injury "assum[es] the correctness of the applicant's position"). Without a stay, this dispute will proceed to litigation on the merits before the district court. CashCall will be denied the contractual right to arbitration that Congress protected through enactment of the FAA. Arbitration is an *alternative* to litigation that "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors*, 473 U.S. at 628. The Opinion denies CashCall that alternative, and issuance of the mandate while CashCall seeks certiorari review would result in irreparable harm.

Congress recognized the irreparable nature of this harm through § 16 of the FAA, which provides for an *immediate* appeal of a district court decision that either "refus[es] a stay of any action under section 3 of this title," "den[ies] a petition under section 4 of this title to order arbitration to proceed," or "den[ies] an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(A)-(C). Thus, § 16 "[i]n no uncertain terms, … 'makes clear that any order favoring litigation over arbitration is immediately appealable and any order

13

favoring arbitration over litigation is not.'"  *Ehleiter v. Grapetree Shores, Inc*., 482 F.3d 207, 214 (3d Cir. 2007) (citation omitted); *see also Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) (holding that a district court must stay its proceedings when a party files a non-frivolous appeal of an order denying arbitration).  Section 16 does so for good reason: "the availability of interlocutory review under Section 16 of decisions favoring litigation avoids the possibility that a litigant seeking to invoke his arbitration rights will have to 'endur[e] a full trial on the underlying controversy before [he] can receive a definitive ruling on whether [he] was legally obligated to participate in such a trial in the first instance.'"  *Ehleiter*, 482 F.3d at 214 (citation omitted).

Absent a stay, then, CashCall will suffer the recognized irreparable injury of being forced to litigate claims that should be resolved via arbitration.  Moreover, not staying the case runs the risk of wasting the district court's resources in overseeing a matter that will be resolved by the arbitrator if the case is ultimately sent to arbitration.

14

### III.    <u>CONCLUSION</u>

For the foregoing reasons, CashCall respectfully requests that the issuance of the mandate be stayed pending CashCall's filing of a petition for writ of certiorari with the Supreme Court and a ruling by that Court.

Respectfully submitted,


/s/ Barry Levenstam
BARRY LEVENSTAM

KATHERINE E. GIDDINGS, B.C.S. (949396)
**AKERMAN LLP**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
katherine.giddings@akerman.com

CHRISTOPHER CARVER (993580)
**AKERMAN LLP**
One Southeast Third Ave., 25th Fl.
Miami, Florida 3313132301
Telephone:  (305) 374-5600
Facsimile:   (305) 374-5095
christopher.carver@akerman.com

KATYA JESTIN
NEIL M. BAROFSKY
BRIAN J. FISCHER
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022-3908
Telephone:  (212) 891-1600

BARRY LEVENSTAM
DANIEL T. FENSKE
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
blevenstam@jenner.com


ATTORNEYS FOR APPELLANT

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 5, 2014, I electronically filed the foregoing **Appellant CashCall, Inc.'s Motion to Stay Mandate Pending the Filing of a Petition for Writ of Certiorari** with the Clerk of the Court by using the CM/ECF system.  I also further certify that the foregoing document was sent postage prepaid by United States Mail to Aaron Goss, John S. Hughes,  Mona Lisa Wallace, Cathy Anne Williams, Wallace & Graham, P.A., 525 North Main Street, Salisbury,          NC          238144          (agoss@wallacegraham.com, jhughes@wallacegraham.com,          mwallace@wallacegraham.com,          and cwilliams@wallacegraham.com);  and  Janet  R.  Varnell  and  Brian  William Warwick,  Varnell  &  Warwick,  P.A.,  20  LaGrande  Blvd.,  The  Villages,  FL 32159-2384                              (jvarbell@varnellandwarwick.com, bwarwick@varnellandwarwick.com) (Attorneys for Plaintiff/Appellee).


/s/ Christopher S. Carver
CHRISTOPHER S. CARVER

# Appendix A

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10257-EE

_____

MICHAEL DASHER,

                    Plaintiff - Appellee,

versus

RBC BANK (USA),
d.b.a. RBC Bank,

                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the  Southern District of Florida

_____

ORDER:

The motion of Appellant, RBC BANK, (USA), d.b.a. RBC Bank, for stay of the issuance of the
mandate pending petition for writ of certiorari is GRANTED to and including **July 02, 2014**, the
stay to continue in force until the final disposition of the case by the Supreme Court, provided
that within the period above mentioned there shall be filed with the Clerk of this Court the
certificate of the Clerk of the Supreme Court that the certiorari petition has been filed. The Clerk
shall issue the mandate upon the filing of a copy of an order of the Supreme Court denying the
writ, or upon expiration of the stay granted herein, unless the above mentioned certificate shall
be filed with the Clerk of this Court within that time.

_____/s/____Charles R. Wilson_____
UNITED STATES CIRCUIT JUDGE

ORD-45