IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

USCA Case No. 13-13822
United States District Court, Southern District of Florida
Case No.: 13-cv-60066-Cohn/Seltzer

_____

ABRAHAM INETIANBOR,

Plaintiff/Appellee,

v.

CASHCALL, INC.,

Defendant/Appellant.

_____

**APPELLEE'S RESPONSE TO MOTION TO STAY MANDATE
PENDING THE FILING OF A PETITION FOR WRIT OF CERTIORARI**

_____

Mona Lisa Wallace
John S. Hughes
Cathy Anne Williams
**Wallace & Graham, P.A.**
525 N. Main Street
Salisbury, NC 28144
800-849-5291
704-633-9434 (fax )
mwallace@wallacegraham.com
jhughes@wallacegraham.com
cwilliams@wallacegraham.com

Janet Varnell
Brian William Warwick
**Varnell & Warwick P.A.**
Post Office Box 1870
Lady Lake, FL 32158
352-753-8600
352-504-3301 (fax)
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

**ATTORNEYS FOR APPELLEE**

USCA Case No. 13-13822

United States District Court, Southern District of Florida
Case No.: 13-60066-CIV-Cohn/Seltzer

Inetianbor v. CashCall, Inc.

**CERTIFICATE OF INTERESTED PARTIES PURSUANT TO
FED. R. APP. P. 26.1 AND 11TH CIR. R. 26.1-1**

Appellee Abraham Inetianbor, by his undersigned counsel, pursuant to Fed.

R. App. P. 26.1 and 11th Cir. R. 26.1-1 hereby certify that counsel believe that the

certificates contained in the prior briefs filed are complete with regard to including

a complete list of all persons and entities known to Appellee to have an interest in

the outcome of the particular case or appeal.

Appellee, Abraham Inetianbor, by his undersigned counsel, respectfully submits his Response to Appellant Cashcall, Inc.'s Motion to Stay the Mandate Pending the Filing of a Petition for Writ of Certiorari dated December 5, 2014.

## I.    <u>INTRODUCTION</u>

Appellant requests a stay of this Court's mandate pending Appellant's intended filing and disposition of its petition for certiorari. By its terms, Cashcall's petition will seek interlocutory review of a highly fact-based determination that our Supreme Court has repeatedly described to be the kind of determination that the trial courts and courts of appeals are in the best position to make. This Court applied settled principles reflecting the majority view of the law and Appellant seeks to create a Circuit conflict where there is none. Further, the unusual facts of the case serve as an unlikely platform for the Supreme Court to grant certiorari in order to provide guidance on arbitration issues that may arise in the future. Under the circumstances, Cashcall has little prospect of obtaining certiorari review, let alone winning a reversal, of this Court's unanimous judgment. Moreover, there is no circumstance in which resumption of proceedings before the district court would injure Cashcall in any way. To the contrary, it is the Appellee, Mr. Inetianbor, who would be harmed by the further delay caused by the Appellant's request. Cashcall therefore has not met any of the requirements for a stay. Accordingly, this Court should deny Cashcall's request and issue its mandate immediately.

## II.  <u>LEGAL STANDARD</u>

"A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.  The motion … must show that the certiorari petition would present a substantial question and that there is good cause for a stay."  Fed. R. App. P. 41(d)(2)(A).  "Ordinarily the motion will be denied unless it shows that it is not frivolous, not filed merely for delay, and shows that a substantial question is to be presented to the Supreme Court or otherwise sets forth good cause for a stay."  11th Cir. R. 41-1(a).

An applicant for a stay "must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal."  *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., in chambers) (quoting *Whalen v. Roe*, 423 U.S. 1313, 1316 (1975) (Marshall, J., in chambers)).  As the Supreme Court recently described:

> A denial of a stay is not a decision on the merits of the underlying legal issues.  In determining whether to grant a stay, we consider instead whether the applicant has demonstrated "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction; (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Conkright v. Frommert*, 556 U.S. [1401, 1401], 129 S.Ct. 1861, 1862, 173 L.Ed.2d 865 (2009) (GINSBURG, J., in chambers) (internal quotation marks and alterations omitted). In addition, "in a close case it may be appropriate to balance the equities," to assess the relative harms to the parties, "as well as the interests of

the public at large." *Id.,* at [1401], 129 S.Ct., at 1862 (internal quotation marks omitted).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. [418, 433-34], 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009) (internal quotation marks omitted).  It is instead an exercise of judicial discretion, and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Ibid.*

*Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 960-61 (2009)

(per curiam).

The criteria for deciding whether to grant a stay are well established. An applicant must demonstrate: (1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed.

*Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1319 (1994)

(Rehnquist, C.J., in chambers) (citing *Barnes v. E-Systems, Inc. Group Hospital*

*Medical and Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991)).[1]

Relief under Fed. R. App. P. 41 "is not … a matter of right but of sound

judicial discretion." *United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993)

---

[1] *See also South Park Indep. School Dist. v. United States*, 453 U.S. 1301, 1303 (1981) (Powell, J., in chambers) ("The standards for granting a stay of mandate pending disposition of a petition for certiorari are well established: '[T]here must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed.'" Quoting *Times-Picayune Publishing Corp. v. Schulingkamp*, 419 U.S. 1301, 1305 (1974) (Powell, J., in chambers)).

(Ripple, J., in chambers). "Therefore, the inquiry must center on whether the applicant will suffer irreparable injury and whether the applicant has a reasonable probability of succeeding on the merits." *Id.*

To demonstrate a reasonable chance of succeeding on the merits, the movant must show first, that it is likely that the Supreme Court will grant certiorari and reverse the judgment. *Brooks v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers) ("To demonstrate a reasonable chance of succeeding on the merits, the applicant must show a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of this court."). This is a stringent standard to meet. *See Id.* ("I cannot say that the City has made a strong case that further review by the Supreme Court is warranted or that the Supreme Court will ultimately reach a decision different from the one reached in this court."); *South Park Indep. School Dist.*, 453 U.S. at 1303 ("I cannot conclude that there is a 'reasonable probability' four Members of the Court will vote to grant certiorari."); *Nara v. Frank*, 494 F.3d 1132, 1133 (3rd Cir. 2007) (denying stay, finding that the movant did not "cite authority to suggest that at least five Justices would disagree with our analysis").

Even if a reasonable probability of success is shown, the movant must also show that "irreparable injury will take place if the stay is not granted." *Brooks*, 239 F.3d at 828. Mere delay or expense of proceedings in the trial court does not show

4

irreparable injury. *See Nara*, 494 F.3d at 1133 ("Finally, the Commonwealth has failed to show that an 'irreparable injury' is likely absent a stay. Nothing prevents the Commonwealth from preparing to commence trial within 120 days while simultaneously filing a petition for certiorari.").

Finally, in reviewing the request and in determining whether there is irreparable injury, "it is necessary to balance the equities of granting a stay by assessing the harm to each party if a stay is granted." *Brooks*, 239 F.3d at 828. In short, a stay is only granted "in exceptional cases." *Nara*, 494 F.3d at 1133.

## III.  <u>ARGUMENT</u>

Cashcall fails to show entitlement to the extraordinary relief of a stay because it cannot demonstrate either a reasonable probability of success *or* irreparable injury. In addition, the balance of equities strongly favors denial of the stay.

### A.    There is Little to No Chance that the Supreme Court Would Disturb this Court's Ruling

Appellant must demonstrate "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction; [and] (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous….." *Conkright*, 556 U.S. at 1401. Appellant has not met this standard.

### i.     Cashcall Fails to Demonstrate a Reasonable Probability that Certiorari Will Be Granted

Cashcall advances no cogent argument that certiorari will be granted.  To the contrary, the circumstances weigh heavily *against* a grant of certiorari.

First, on October 2, 2014, this Court issued a well-reasoned Opinion affirming District Judge Cohn's fact-specific ruling below.  Circuit Judge Martin's Opinion is thorough and in a straightforward manner following the precedent of *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1222 (11th Cir. 2000) setting for the "integral" rule which itself "remains the majority rule among Circuit Courts." (Opinion, p. 6).  In addition, the concurring opinion by Judge Restani, sitting by designation, points out how the unusual facts reflect a "sham" and "unconscionable" agreement based on the evidentiary record.  (*Id.*, p. 17).  The fact-specific nature of the Court's ruling and application of *Brown*'s majority rule lead to the conclusion that a petition for certiorari will likely be denied.

Second, Cashcall petitioned the Eleventh Circuit for an *en banc* rehearing, which request was denied on December 1, 2014 with "no Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc…."  The fact that not one Judge requested a vote militates against a finding that the Supreme Court may grant certiorari.  *See Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (denying motion to stay mandate, noting

that "[t]he active judges of this court voted to leave that judgment undisturbed in rejecting the suggestion for rehearing en banc").

Third, there is no significant conflict among the courts of appeals on the issue decided in this case. Cashcall contends that this Court's decision conflicts with the Seventh Circuit Decision in *Green v. U.S. Cash Advance Ill., LLC,* 724 F.3d 787 (7th Cir. 2013). However, as this Court properly recognized, the majority of the circuits all agree with this Court. *See* Opinion dated October 2, 2014, at p. 6 n.1 (citing *In re Salomon Inc. S'holder's Derivative Litig. 91 Civ. 5500(RRP),* 68 F.3d 554, 561 (2nd Cir.1995); *Khan v. Dell Inc.,* 669 F.3d 350, 354-57 (3rd Cir. 2012); *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.,* 689 F.3d 481, 491 n.7 (5th Cir. 2012); *Nat'l Iranian Oil Co. v. Ashland Oil Co.,* 817 F.2d 326, 333-35 (5th Cir. 1987); *Reddam v. KPMG LLP,* 457 F.3d 1054, 1059-61 (9th Cir. 2006), *abrogation on other grounds recognized by Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.,* 621 F.3d 931, 940 (9th Cir. 2010)). Because *Green* is an outlier and this Court's decision applies the same established analysis used by the Court in *Brown* and elsewhere, it is highly unlikely the Supreme Court will grant certiorari.

To demonstrate a reasonable probability of success on the merits, the applicant must show a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment. *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. at 960-61.

In this case, Cashcall has merely pointed out that there exists a difference of opinion between this Court and the Court of Appeals for the Seventh Circuit on the "integral provision" rule.  This variance does not automatically equate to a circuit split and even if it were considered a circuit split, that is only one of the criteria employed by the Supreme Court in determining whether to grant certiorari.  There are many cases in which the Court decides to let a conflict stand or at least to allow the issue to "percolate" and allow a good number of circuits to decide the issue before determining whether the conflict truly exists, is significant and will persist.

Finally, even if the Supreme Court were inclined to accept certiorari in a matter so as to clarify the "integral" issue reflected by *Brown*, the present case would likely be the last matter the Supreme Court would ever want to use to accomplish that goal due to the extraordinary factual circumstances.  As noted in Judge Restani's concurrence, the evidentiary record reflects frankly a "sham" proceeding which is highly unusual to see in any matter.

This Court's decision was well-reasoned, unexceptional and entirely consistent with Supreme Court authority and that of its sister circuits.  Cashcall in arguing that this Court improperly added an "integrality exception" to the Federal Arbitration Act overstates the scope of the holding and seeks to paint a picture of a dramatic split in the circuits simply due to the variance in *Green*.  But the claimed conflict does not involve circumstances where the entire arbitration clause is a

complete sham of the type involved here.  In fact, *Green* is a decision by the same court (the Seventh Circuit) that recently <u>agreed</u> that the same CashCall arbitration provision is a sham and unconscionable. *See Jackson v. Payday Financial, LLC*, No. 12-2617, 2014 WL 4116804, *9 (7th Cir. Aug. 22, 2014) (finding that the CashCall Western Sky arbitration clause was "a sham from stem to stern").  The *Jackson* court concluded that "[t]he arbitration provision contained in the loan agreements is unreasonable and substantively and procedurally unconscionable under federal, state, and tribal law." *Id.* at *13.

Furthermore, while the "integral" issue may be important to CashCall, it is simply not a pressing issue with regard to arbitration law generally and therefore not worth the Supreme Court's while.  Application of the "integral" analysis and determination of issues as to substitute arbitrators have most often arisen in the context of the National Arbitration Forum or NAF, an entity which had previously held arbitrations but later shut down.  *See, e.g., Ranzy v. Tijerina*, 393 Fed. Appx. 174 (5th Cir. 2010) (using the *Brown* "integral" test, on facts involving the NAF). This practical point guides against a stay in two ways.  First, as the NAF recedes further into the past, the likelihood that the courts will continue to face these issues diminishes. Second, while the NAF was listed as an arbitrator in numerous consumer contracts over the years, there are no reported examples of any other company ever specifying a sham Tribal arbitration system like the one used by

CashCall here.  Thus, the matter is unlikely to warrant Supreme Court inclusion in the matters for which the Court grants certiorari.

### ii.    Cashcall Fails to Demonstrate a Significant Possibility that this Court's Decision Will Be Reversed

There is no "significant" or even a fair prospect that the Supreme Court would reverse this Circuit's opinion.  In addition to the reasons why it would not grant certiorari, the disposition of this Court is entirely in accord with settled principles of contract and arbitration law.

Arbitration is a matter of contract and courts can investigate the existence of "such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Where, as here, the grounds for revocation relate specifically to the arbitration clause and not just to the contract as a whole, an arbitration clause may be unenforceable.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 402-04 (1967); *see also Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979).   In this case, the challenge was to the validity of the arbitration agreement itself.  Furthermore, the unrefuted facts demonstrate that the very Tribe that was to conduct the arbitration, in reality, had no involvement and were not set up for such procedures.   In fact, the Tribal consumer rules that purportedly governed the proposed arbitration did not exist, and the company-chosen arbitrator who was said to be neutral in fact had his correspondence written for him by the company where

his own daughter worked. The extremely unusual facts of this case make the chances of review extremely limited.

Just as with the *Hooters* case, here the entire arbitral forum was a complete sham, and the purported forum did not even constitute "arbitration" as envisioned by the FAA. *See Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999). That court found that "Hooters materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." *Id.* at 938. The provisions here were like those in *Hooters*, i.e. a "sham system unworthy even of the name arbitration." *Id.* at 940. There, the agreement was riddled with biased provisions that allowed Hooters to choose the arbitrators and unilaterally modify the rules without notice. *Id.* at 938-39. Here, there were no governing rules at all and the putative arbitrator's own family worked for the lender.

What cases like *Hooters* show is that where the facts of a case reflect that the purported arbitration clause does not comport with any of the values of arbitration, but is *per se* so structurally flawed that it does not even qualify as arbitration, a court will not enforce it. The present case is merely an application of that doctrine, which flows from facts showing egregious and "sham" proceedings. Here, the facts reflected precisely that, as discussed by Judge Restani in the concurrence. The unusual underlying facts herein regarding a sham arbitration system clearly mitigate

11

against the case being a matter that the Supreme Court would have any inclination

to use as a vehicle to resolve a circuit split.  There is simply no substantial federal

interest in courts enforcing arbitration clauses where the arbitration system set forth

in the clause was a complete sham.  *Accord, Jackson*, *supra,* 2014 WL 4116804.

As that court observed, reviewing a similar clause issued by the same company:

> The arbitration clause here is void not simply because of a strong
> possibility of arbitrator bias, but because it provides that a decision is
> to be made under a process that is a sham from stem to stern.
> Although the contract language contemplates a process conducted
> under the watchful eye of a legitimate governing tribal body, a
> proceeding subject to such oversight simply is not a possibility. The
> arbitrator is chosen in a manner to ensure partiality, but, beyond this
> infirmity, the Tribe has no rules for the conduct of the procedure. It
> hardly frustrates FAA provisions to void an arbitration clause on the
> ground that it contemplates a proceeding for which the entity
> responsible for conducting the proceeding has no rules, guidelines, or
> guarantees of fairness.

Order at *9 (emphasis added); *see also Hooters*, 173 F.3d at 940 ("By creating a

sham system unworthy even of the name of arbitration, Hooters completely failed in

performing its contractual duty.").  The unusual facts herein involving a sham

provision mean that the clause is unenforceable based on basic principles of law

agreed to by all Circuits, and for which there is no split among the Circuits.  *See*

*Holland*, 1 F.3d at 457 (denying motion where "no division among the circuits");

*Coalition for Economic Equality*, 122 F.3d at 719 (same).

There is no showing that multiple Circuits have abandoned the well-

established *Brown* "integral" analysis in favor of the Seventh Circuit's ruling in

*Green* nor that the Seventh Circuit itself would apply a *Green*-style analysis herein, given its own ruling in *Jackson, supra*. To the contrary, the *Green* decision appears to be an outlier. Thus at most this is a situation in which one would expect the Supreme Court to continue to allow the issues to "percolate" and would wait until a clearly developed and meaningful split among the Circuits had developed, before granting certiorari. And even then, it is highly unlikely the Supreme Court would find a factual record as here to be desirable for purposes of granting certiorari.

The second issue Cashcall argues is worthy of certiorari review and which would result in reversal relates to the impact of a "severance" provision. (See Motion to Stay Mandate, pp. 2, 9-12). In this case, however, that issue is inextricably tied in with the other issues already discussed. It is not that severance provisions never have significance, but that their significance depends upon the contractual and factual context. In this case, where the clause as a whole is a sham and a farce, with none of the indicia of a serious arbitration provision, the severance provision is not entitled to be used as a way out and a means to rewrite the contract. Further, because the provisions that would be severed go to the heart of the agreement, the severance clause is of no import.

In its Opinion, this Court cites the Restatement (Second) of Contracts § 184. (Opinion, p. 12). The Restatement has been relied on by many courts and provides that a court may sever the unenforceable portion of an agreement and enforce the

remainder "in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." *See Spinetti v. Service Corp. Intern*., 324 F.3d 212, 219 (3rd Cir. 2003) (quoting Rs.2d Contracts § 184). Here, the language that the Appellant seeks to sever is an essential and integral part of the contract. Further, the Appellant engaged in serious misconduct in promulgating such a sham procedure.

None of the cases cited by Appellant reflect a court enforcing a severability clause and severing offensive language and sending a matter along to arbitration where the party who drafted the agreement sought to promulgate a manifestly sham procedure. (*See* Motion, p. 10). Clearly, the factual and contractual context matters and where a provision is integral to the agreement it is also likely to be essential for purposes of analyzing severability.

For all of these reasons, Appellant fails to demonstrate a significant probability that a petition for certiorari would be granted or lead to a reversal. *Compare Doe v. Miller*, 418 F.3d 950, 951-52 (8th Cir. 2005) (declining to allow stay, finding "[w]e do not believe appellees have demonstrated a particularly strong probability."); *Galdikas v. Fagan*, 347 F.3d 625 (7th Cir. 2003) (Ripple, J.) (finding that movant had not succeeded in proving a conflict and likelihood of certiorari and ruling that "[b]ecause the plaintiffs have failed to demonstrate a reasonable probability of success on the merits, the motion must be denied").

**B.    Cashcall Fails to Demonstrate an Irreparable Injury**

Cashcall makes no showing that issuance of a mandate will cause irreparable injury.  *See Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., in chambers) (declining to allow stay: "In this case, the Administrator has not convinced me that irreparable harm will result if the District Court's injunction remains in effect pending appeal.").  Because CashCall has failed to demonstrate an irreparable injury, this Court may deny the request for a stay on that basis alone without the need to review further contentions.  *See Id.* ("An applicant's likelihood of success on the merits need not be considered, however, if the applicant fails to show irreparable injury from the denial of the stay."); *Bricklayers Local 21 v. Banner Restoration, Inc*., 384 F.3d 911, 911-12 & n.1 (7th Cir. 2004) (Ripple, J., in chambers) ("Banner's motion also could be denied simply because it does not discuss the irreparable harm Banner would suffer if the stay were denied.").

CashCall contends that it would suffer an irreparable injury because it would be denied a contractual right to a forum that is purportedly simpler, more informal and more expeditious.  (Motion, p. 13).  It is the worst form of hypocrisy, though, for a defendant to claim that they seek the simplicity and expediency of an alternative forum on the heels of spending two years (the loan dates back to early 2011 and Mr. Inetianbor began disputing it soon after) and exorbitant amounts of resources to avoid the judicial system and prolong matters.    The purported

arbitration procedure CashCall put into its loan agreement in fact is a sham that does not even exist.  Here, as in other cases where stays have been denied, "delay alone is not, on these facts, irreparable injury."  *Whalen v. Roe*, 423 U.S. 1313, 1317 (1975) (Marshall, J., in chambers).

The Appellee, in fact, is the party who is being injured.   Appellant has succeeded in delaying the resolution of this matter on the merits, now, for years, based on its claims for arbitration.   In the meantime, the matter has caused the Appellee, Mr. Inetianbor, great stress and hardship, particularly because for the first phase of this matter he had to represent himself *pro se*.   There is no reason why the parties cannot prepare for trial before the District Court even as CashCall pursues any petition.  *See Nara*, 494 F.3d at 1133 ("Finally, the Commonwealth has failed to show that an 'irreparable injury' is likely absent a stay. Nothing prevents the Commonwealth from preparing to commence trial within 120 days while simultaneously filing a petition for certiorari.").

Cashcall cannot demonstrate irreparable injury. Issuing the mandate would merely allow remand proceedings to begin. There is no pending remedial judgment or decree to enforce that would alter Cashcall's business while its petition for certiorari is considered, and its petition will almost certainly be resolved before any remedial order is actually entered by the District Court. Thus, the only injury to Cashcall would be the cost of participating in the remand proceedings, but as noted,

the mere delay and expense caused by litigation does not support a finding of irreparable injury. *See Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 740 (D.C. Cir. 1987) (in exhaustion of remedies context, finding that "litigation expenses standing alone do not constitute irreparable injury sufficient to warrant the disruption of ongoing agency proceedings"); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) (in exhaustion of remedies context, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *Miller*, 418 F.3d at 953 (declining to allow stay despite showing of "some cost and hardship"). Accordingly, the requested stay must be declined.

### C.    The Balance of Equities Disfavors a Stay of the Mandate

As an additional consideration, in reviewing a request for a stay the courts will "balance the equities," that is "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes*, 501 U.S. at 1304-05 (internal citations omitted). Here, the balance of equities tilts decidedly in favor of Appellee. Cashcall offers no equities in its favor, and forecasts no cognizable injury that it will suffer from resuming the proceedings. By contrast, granting the stay will further harm the public interest.

Cashcall has been found to have committed serious consumer rights violations in several cases. *See, e.g., CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (affirming more than $13.8 million in

penalties and restitution against CashCall for improper and abusive loan collection practices); *State v. Cashcall, Inc.,* No. A13-2086 (Minn. Ct. App. Aug. 18, 2014) (order affirming injunction against CashCall for "using a third company, Western Sky Financial, LLC, as a front to make usurious loans to Minnesota consumers"). Those violations remain unremedied with regard to the Plaintiff. Until that remedy is in place, each day of delay contributes additional injury to Plaintiff and to the public interest because Cashcall is not prohibited or deterred from its unlawful conduct. Issuing the mandate would end that delay for the Plaintiff who will finally have his day in court. This Court should deny Cashcall's request for a stay so that proceedings can continue in the District Court.

> **D.     Additional Considerations that Support Denial of a Stay.**

This Court's judgment is interlocutory. That fact "of itself alone furnishe[s] sufficient ground for the denial" of any petition for certiorari. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 258 (1916); *see also Brotherhood of Locomotive Firemen v. Bangor& Aroostook R.R. Co.*, 389 U.S. 327, 328 (1967) ("because the Court of Appeals remanded the case, it is not yet ripe for review by this Court"); *Virginia Military Inst. v. United States*, 508 U.S. 946 (1993) (Scalia, J., concurring) ("We generally await final judgment in the lower courts before exercising our certiorari jurisdiction"). The interlocutory nature of the current

18

issues advises in favor of allowing the matter to proceed before the District Court so that a final adjudication may occur on the underlying issues.

## IV.    CONCLUSION

For the reasons stated above, the Appellant, Mr. Inetianbor, respectfully requests that Cashcall's Motion For Stay Of The Mandate Pending Petition For Writ Of Certiorari be denied.

Respectfully submitted,

s/Janet Varnell
Janet Varnell
Florida Bar No.:  0071072
Brian William Warwick
Florida Bar No.:  0605573
Varnell & Warwick, P.A.
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*

Cathy Anne Williams
Fl. Bar No. 88862 (admitted *pro hac*)
Mona Lisa Wallace
John S. Hughes
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 238144
Phone: 800-849-5291
*cwilliams@wallacegraham.com*
*mwallace@weallacegraham.com*
*jhughes@wallacegraham.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15th, 2014, I electronically filed

the foregoing document with the Clerk of the Court by using the CM/ECF system.

I also further certify that a copy of the foregoing document was sent by United

States Mail to the following:

Katherine E. Giddings
AKERMAN SENTERFITT
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Telephone: (850) 224-9634
Facsimile: (850) 222-0103
*katherine.giddings@akerman.com*

Christopher Carver
AKERMAN SENTERFITT
One Southeast Third Ave., 25th Fl.
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
*christopher.carver@akerman.com*

Katy A. Jestin
Neil M. Barofsky
Brian J. Fischer
JENNER & BLOCK LLP
919 Third Avenue
Chicago, Illinois 60654-3456

Barry Levenstam
Daniel T. Fenske
JENNER & BLOCK LLP
353 North Clark Street
New York, NY 10022-3908

Attorneys for Appellant

/s/ Janet R. Varnell
Janet R. Varnell

20